IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | | |
|---|---|---|
| The Grandoe Corporation, | ) | Court File: _____ |
| Plaintiff, | ) | |
| vs. | ) | **COMPLAINT** |
| Gander Mountain Company, | ) | |
| Defendant. | ) | |

Plaintiff The Grandoe Corporation ("Grandoe"), for its Complaint against the Defendant Gander Mountain Company ("Gander Mountain"), by and through its undersigned counsel, states and alleges as follows:

**PARTIES, VENUE, AND JURISDICTION**

1. Grandoe is a corporation incorporated under the laws of New York with its principal place of business located at 11 Grandoe Lane, Gloversville, New York 12078.

2. Gander Mountain is a corporation incorporated under the laws of Minnesota with its principal place of business located at 180 East 5th St., Suite 1300, St. Paul, Minnesota 55101.

3. The Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity between Grandoe and Gander Mountain and the amount in controversy exceeds $75,000.00.

4. Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because the events that gave rise to this Complaint substantially occurred in this district.

## GENERAL ALLEGATIONS

5. Grandoe is a manufacturer of mainly outdoor cold weather products, such as gloves. The products manufactured by Grandoe are found at retailers in virtually every major market in the United States.

6. Gander Mountain is engaged in the business of retail sales. It is a large, national retailer of a wide variety of products, including outdoor cold weather products.

7. On or about October 31, 2008, a senior product buyer for Gander Mountain, Jeanne Hall, informed Grandoe of Gander Mountain's desire to develop a cold weather accessory program (the "CWA program") with a manufacturer capable of producing products bearing Gander Mountain's own branding or name.

8. As Grandoe specializes in providing retail store branded manufacturing programs tailored to a retailer's particular needs, Grandoe expressed an interest in meeting with Gander Mountain representatives to discuss the CWA program. Gander Mountain desired a CWA program that could produce Gander Mountain branded gloves.

9. In November of 2008, representatives of Grandoe met with Gander Mountain's senior buyer on two occasions. The parties discussed two different program types for production—an early buy program for manufacturing during Grandoe's off peak production period, commencing in December, and a regular in line program for manufacturing soon thereafter. The early buy program was aimed at providing a substantial discount to Gander Mountain in return for Grandoe receiving early

commitments from Gander Mountain to manufacture Gander Mountain branded products during Grandoe's slower off season manufacturing cycle.

10.     The parties executed a Gander Mountain Resource Allowance Contract on November 14, 2008, where Gander Mountain committed to minimum receipts of $1,500,000.00 (the "RAC") for the off season portion of the CWA program.

11.     From November 2008 to January 2009, Gander Mountain communicated the specific product styles, branding, and quantities it required Grandoe to manufacture on its behalf for the in line and off season products.

12.     On November 18, 2008 and again on December 12, 2008, Grandoe confirmed to Gander Mountain that it had purchased the necessary raw materials to commence production of the products under the CWA program.

13.     On February 10, 2009 and well aware of Grandoe's significant expenditures on raw materials and the commencement of production of the gloves, Gander Mountain instructed Grandoe to submit an order template to reflect the quantities of products Gander Mountain had previously committed to.  Grandoe complied with Gander Mountain's request and subsequently submitted an order template reflecting Gander Mountain's commitment of $1,690,000.00 for the off season program and $1,379,220.00 for the in line program.

14.     Between the in line program and the off season program under the CWA program which Gander Mountain specifically requested, Grandoe manufactured

3

approximately $3,050,000.00 worth of gloves exclusively tailored to meet Gander Mountain's branding requirements.

15. On March 27, 2009, Gander Mountain's senior product buyer confirmed Gander Mountain's commitment to submit purchase orders for the quantities it had previously committed to. The purchase orders are the documents that trigger shipment from Grandoe to Gander Mountain retail locations. During the March 27 conference call, Gander Mountain promised to transmit the purchase orders by the end of business on April 1, 2009.

16. On April 23, 2009, Grandoe representatives met with Gander Mountain because of the inconsistencies with the amount of purchase orders received. At this face-to-face meeting, Gander Mountain reaffirmed and assured its commitment to Grandoe. In an effort to accommodate Gander Mountain, Grandoe reduced the amount of the commitment by $200,000.00.

17. Despite Gander Mountain's repeated reaffirmations and assurances of its commitment to the products Grandoe manufactured specifically and exclusively for Gander Mountain, at present Grandoe has only received approximately $950,000.00 in payments from Gander Mountain, but has manufactured products valued at approximately $3,050,000.00 to accommodate Gander Mountain's demands.

18. In or about April 2010, Gander Mountain informed Grandoe of its intent not to purchase the inventory of product it had previously committed to as described above. Grandoe has no meaningful opportunity to resell the products it has manufactured for Gander Mountain because of Gander Mountain's specific branding.

## COUNT I
### Breach of Contract

19. Grandoe incorporates paragraphs 1-19 as if fully set forth herein.

20. Pursuant to the RAC, the communications between the parties, and/or the course of dealing between the parties, Grandoe has fully performed its obligations to manufacture particular products and specific quantities for Gander Mountain in connection with the CWA program described above.

21. Gander Mountain materially breached its agreements with Grandoe as set forth above by failing to perform as it represented and agreed.

22. As a direct and proximate result of Gander Mountain's material breaches of its agreements with Grandoe, Grandoe has been damaged in an amount in excess of $75,000.

## COUNT II
### Breach of Implied Covenant of Good Faith and Fair Dealing

23. Grandoe incorporates paragraphs 1-23 as if fully set forth herein.

24. Implied in the agreements, communications, and/or course of dealing between Grandoe and Gander Mountain is a duty of good faith and fair dealing which requires that each party to the agreement do nothing destructive of the other's rights to benefit from the contracts or to obstruct the other's performance of the contracts.

25. This covenant also requires honesty and the observance of reasonable commercial standards of fair dealing in the trade in the parties' performance of their business dealings arising out of their agreements, communications, and/or course of dealing.

26. Gander Mountain's actions described herein constitute a breach of the implied covenant of good faith in fair dealing.

27. As a direct and proximate result of Gander Mountain's actions, as laid out above, Grandoe's ability to realize the purported benefits of its agreement with Gander Mountain were unlawfully obstructed by Gander Mountain's violation of the implied covenant of good faith and fair dealing.

28. As a direct and proximate result of Gander Mountain's material breaches of its obligation to act in good faith and deal fairly with Grandoe, Grandoe has been damaged in an amount in excess of $75,000.

## COUNT III
### Promissory Estoppel

29. Grandoe incorporates paragraphs 1-29 as if fully set forth herein.

30. Gander Mountain represented to Grandoe that it would purchase approximately $3,050,000.00 worth of products from Grandoe that were specifically and exclusively designed and manufactured for Gander Mountain in connection with the CWA program described above.

31. These representations are reflected in the parties' course of dealing and communications.

32. Gander Mountain made these representations to support and induce Grandoe to purchase the necessary raw materials and commence manufacturing of the products in connection with the CWA program.

33.     Gander Mountain benefited from Grandoe's decision to manufacture products specifically and exclusively tailored to Gander Mountain's requirements.

34.     Grandoe manufactured the products described above for Gander Mountain in reliance on Gander Mountain's representations, demonstrated through the parties' course of dealing and communications.

35.     Gander Mountain now refuses to perform those promises.

36.     Gander Mountain should be estopped from refusing to perform its promises demonstrated through the parties' course of dealing and communications.

37.     By this Count, Grandoe seeks its damages in excess of $75,000.

## COUNT IV
### Fraud and/or Negligent Misrepresentation

38.     Grandoe incorporates paragraphs 1-37 as if fully set forth herein.

39.     The representations and conduct of Gander Mountain, including but not limited to those assurances set forth above, were made with the intention that Grandoe rely on them in making their decision as to whether they should manufacture the Product.

40.     Grandoe reasonably relied on the assurances given by Gander Mountain as set forth above and communicated by Gander Mountain employees, including those made by its senior buyer Jeanne Hall, in deciding to continue to manufacture the products in connection with the CWA program.

41.     In reliance on the representations made to it by Gander Mountain, Grandoe incurred further liability, extended credit, and otherwise took actions to its detriment,

including but not limited to, further investments and contributions made to the CWA program.

42.    The representations and assurances made by or on behalf of Gander Mountain as set forth above were false, or omitted to state information necessary to not make them misleading.

43.    Grandoe was deceived by the misrepresentations and omissions of Gander Mountain set forth above.

44.    Grandoe reasonably relied upon the statements and representations of Gander Mountain in making their decision as to extend credit and incur liability, and otherwise make investments and improvements in connection with the CWA program.

45.    Gander Mountain has committed intentional and/or negligent misrepresentation in their representations to Grandoe, as described above, in violation of the common law of Minnesota.

46.    As a direct and proximate result of Gander Mountain's misrepresentations and omissions, Grandoe has incurred substantial past and continuing damage. Grandoe is entitled to recover direct and consequential damages from Gander Mountain in an amount not yet determined, but which is reasonably estimated to be in excess of $75,000.

### COUNT V
### Unjust Enrichment

47.    Grandoe incorporates paragraphs 1-46 as if fully set forth herein.

48.    Through the conduct described above, Gander Mountain has been unjustly enriched under the common law of Minnesota through its retention of the amounts due

and owing to Grandoe for products specifically and exclusively manufactured in accordance with Gander Mountain's requirements, among other things.

49. Gander Mountain made representations, assurances and promises to Grandoe, including but not limited to those set forth above, and failed to disclose material information to Grandoe.

50. Grandoe reasonably relied upon Gander Mountain's promises, assurances and conduct in deciding to incur liability, extend credit and otherwise make improvements and investments in connection with the CWA program when Grandoe would not have, absent Gander Mountain's above stated promises, assurances, misrepresentations and other conduct described above.

51. Gander Mountain has received an unfair and substantial benefit as a result of Grandoe's actions and the conduct described above, benefits which would not have been bestowed absent Gander Mountain's above stated promises and misconduct.

52. Based on its conduct and statements to Grandoe, Gander Mountain is estopped from acting in a manner inconsistent with its promises and previous conduct and from denying that its promises and conduct are valid and enforceable parts of the agreements reached with Grandoe.

53. As a direct and proximate result of Gander Mountain's failures to honor its promises and agreements which they are estopped to deny, Grandoe has suffered past and continuing damages in an amount not yet determined, but which is reasonably believed to be in excess of $75,000.

**JURY TRIAL REQUESTED**

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that this Court enter the following relief, as set forth below:

1. On behalf of the Plaintiff, damages attributable to Defendant's common law violations as set forth in the individual counts alleged above; and

2. On behalf of the Plaintiff, any other relief to which the Plaintiff may be entitled.

Dated: April 15, 2011

Respectfully submitted,

**FOLEY & MANSFIELD, P.L.L.P.**

By: /s/ Lisa Lamm Bachman
Lisa Lamm Bachman (#264313)
Jared D. Kemper (#0390427)
Attorneys for Plaintiff
250 Marquette Avenue, Suite 1200
Minneapolis, MN 55401
(612) 338-8788 phone
(612) 338-8690 fax
lbachman@foleymansfield.com
jkemper@foleymansfield.com